*Decision will be entered under Rule 50.*

MARIE A. DOLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4892-62. Filed June 23, 1965.

*Martin A. Rosenberg,* for the petitioner.
*James H. Martin,* for the respondent.

---

FORRESTER, *Judge:* Respondent has determined deficiencies in income tax and additions to tax against petitioner as follows:

| Year | Income tax | Additions to tax | |
|------|-----------|-------------------|------------------|
| | | Sec. 6653(a) | Sec. 6651(a) [1] |
| 1957 | $3,925.49 | $196.27 | |
| 1958 | 2,871.32 | 166.48 | $287.13 |

The following issues are presented: (1) Did petitioner file joint returns with John T. Dolan for the years 1957 and 1958? (2) If petitioner filed joint returns with John T. Dolan for 1957 and 1958, does the fact that respondent assessed deficiencies against John T. Dolan bar respondent from subsequently proceeding against petitioner with respect to the same deficiencies? (3) If petitioner filed joint returns with John T. Dolan for 1957 and 1958, does this Court lack jurisdiction because of the fact that the notice of deficiency sent to petitioner was neither a single joint notice nor a duplicate original of a joint notice? [2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

During the taxable years petitioner resided in Brentwood, St. Louis County, Mo. Federal income tax returns for 1957 and 1958, headed "John T. & Marie A. Dolan," were filed with the district director of internal revenue, St. Louis, Mo. Petitioner did not file separate individual income tax returns for 1957 or 1958.

Petitioner and John T. Dolan (hereinafter referred to as John) were married in June 1928. They filed joint Federal income tax returns for 1956 and some other years prior to 1957. The 1956 return of John and petitioner was received by the district director at St. Louis on April 18, 1957.

During 1956 and the first half of 1957 John increasingly neglected his obligation to support petitioner and their minor children. In 1957, he consistently failed to pay the household obligations, and only provided money when petitioner and the children were in need of groceries. He spent a great deal of time away from home on various trips and frequently came home under the influence of alcohol. On one occasion in July 1957 he hit petitioner with a chair, then kicked her after she fell down. Shortly thereafter, petitioner and John permanently ceased living together. They were not, however, sep-

---

[1] Unless otherwise stated, all statutory references are to the 1954 Code as applicable during 1957–58.

[2] Petitioner does not contest the correctness of the adjustments made in the notice of deficiency.

arated under a decree of divorce or separate maintenance at any time during 1957 or 1958.

On January 2, 1957, while petitioner and John were still living together as husband and wife, one Earl N. Page and his wife executed a warranty deed conveying certain real property (sometimes hereinafter referred to as the Lindbergh Boulevard property) located in St. Louis County, Mo., to petitioner and John. On the same day petitioner and John executed a deed of trust covering the property to secure the purchase price. The following day, January 3, 1957, petitioner and John, by warranty deed, conveyed the Lindbergh Boulevard property to Joseph A. Simpkins and his wife. Joseph A. Simpkins (hereinafter referred to as Simpkins) was at the time and had been for some years John's employer. The purpose and effect of the above-mentioned transfers was to enable Simpkins to provide the money needed to exercise an option held by John on the property. It was agreed that John and petitioner would receive one-half the net profits if and when the Lindbergh Boulevard property was sold.

On March 14, 1958, petitioner filed in the Circuit Court, St. Louis County, Mo., a petition seeking divorce from John. On March 17, 1958, there was filed with the district director of internal revenue, St. Louis, Mo., a claim, signed by John and petitioner, for refund of 1956 income taxes in the amount of $792.28.

On June 16, 1958, John and petitioner separately agreed to accept a total of $10,000 from Simpkins in exchange for their right to receive one-half the net profits to be realized when and if the Lindbergh Boulevard property was sold. Under the agreement, Simpkins was to pay the $10,000 by delivering to John and petitioner two $2,000 checks payable to John and petitioner jointly, and by delivering to Phil Kopitsky or Bond Investment Co. a check for $6,000 as full payment of a promissory note of John's. As part of the agreement, John and petitioner executed, on June 16, 1958, a quit-claim deed to the Lindbergh Boulevard property in favor of Simpkins and his wife. The provision for two $2,000 checks was insisted upon by Simpkins, who wanted to ensure that petitioner received some of the money. John endorsed one of the $2,000 checks over to petitioner, who, on June 17, 1958, deposited it in her checking account with the St. Louis County National Bank.[3] Petitioner was not fully aware of the significance of the above-described agreement and deed; her chief interest was in obtaining money needed to satisfy a number of unpaid bills. On the 1958 Federal income tax return filed in the name of John and petitioner, the amount of $5,000, representing the taxable portion of the $10,000 paid by Simpkins, is reported as a capital gain.

---

[3] The other $2,000 check, endorsed by John and petitioner, apparently was given to John and used by him for undisclosed purposes.

It was also on June 16, 1958, that a Federal income tax return for the calendar year 1957, headed "John T. & Marie A. Dolan," was filed with the district director of internal revenue, St. Louis, Mo.

In connection with her divorce action petitioner filed, on January 12, 1959, a motion for alimony pendente lite and attorney's fees. The motion was granted on February 13, 1959; John was required to pay petitioner $100 per week as temporary alimony, $30 per week for the support of each of the two minor children of the marriage, and $750 for interim attorney's fees, and to deposit $50 as costs of court. John failed to make payments as required by the judgment of the court. Consequently, petitioner, on April 6, 1959, caused execution to issue on such judgment in St. Louis County, Mo., and in the city of St. Louis. Subsequently, on May 4, 1959, petitioner instituted a garnishment action in the Circuit Court, St. Louis County, Mo., against Mary Dolan, John's sister, and against Ashland Oil & Refining Co. The garnishment action was dismissed by petitioner as to Mary Dolan on May 13, 1959, and as to Ashland Oil & Refining Co. on May 22, 1959.

A Federal income tax return for 1958, headed "John T. & Marie A. Dolan," was filed with the district director of internal revenue, St. Louis, Mo., on June 15, 1959. On June 25, 1959, a Form 870, accepting overassessments of income tax for the years 1952, 1954, 1955, and 1956 in the respective amounts of $71.09, $200, $427.24, and $407.27, was filed with the district director at St. Louis; this form was signed by John and petitioner.

On May 12, 1960, the Circuit Court of St. Louis County, Mo., granted petitioner a divorce from John. Petitioner received custody of the two minor children. John was ordered to pay petitioner $100 per month for the support of each minor child, $1 per year as alimony, and $750 as additional attorney's fee. Prior to May 12, 1960, no decree of divorce or of separate maintenance had been entered with respect to petitioner's marriage to John.

On or about June 29, 1962, John executed a Form 870, wherein he waived the restrictions on assessment and collection of deficiencies in income tax and additions to tax for the years 1957 and 1958 in amounts identical to those asserted against petitioner and placed in issue in the instant proceeding. Such amounts were assessed against John on August 31, 1962.

The notice of deficiency involved herein was mailed to petitioner at her then address [4] on October 9, 1962, which date was within the periods of limitations on assessment, as extended by consents executed by petitioner and respondent, with respect to the years 1957 and 1958. Prior

---

[4] The address of the notice of deficiency was as follows:
"Mrs. Marie A. Dolan
1101A Ralph Terrace
Richmond Heights 17, Missouri"

to the date on which the notice of deficiency was mailed, respondent had been notified that John and petitioner had established separate residences and had been given the address of each. Respondent did not mail to John a duplicate original of a joint notice of deficiency, or any statutory deficiency notice, covering the years 1957 and 1958. The notice of deficiency mailed to petitioner was neither a joint notice nor a duplicate original of a joint notice. The notice of deficiency contained the statement, "The attached statement shows the computation of the deficiency or deficiencies." The statement referred to was headed in the following manner:

Mr. John T. Dolan
Mrs. Marie A. Dolan
(Husband and Wife)
1101A Ralph Terrace
Richmond Heights 17, Missouri

The explanations of several of the asserted adjustments refer to "your income tax return for the taxable year 1957 [or 1958]." The assessments made against John on August 31, 1962, were still outstanding at the time the notice of deficiency was mailed to petitioner.

Petitioner was familiar with Federal income tax returns. She knew what the returns looked like, and she knew that a smaller tax liability usually resulted from filing a joint return than from filing separate returns. The name "Marie A. Dolan" appearing on the signature lines of the 1957 and 1958 income tax returns headed "John T. & Marie A. Dolan" was in each case signed by petitioner.

OPINION

The first issue is whether petitioner and John filed joint returns for the taxable years 1957 and 1958. It is petitioner's primary position that she did not sign and does not know how her name came to be signed on the returns in question. Petitioner has the burden of proving the returns were not joint returns. *Myrna S. Howell*, 10 T.C 859 (1948), affirmed per curiam 175 F. 2d 240 (C.A. 6, 1949). She contends that either her signature was forged on the returns or she was tricked into signing them without knowing they were income tax returns.

Respondent produced as a witness a handwriting expert who testified that he had compared the signatures on the questioned returns with admittedly genuine signatures, as well as with other samples of petitioner's handwriting, and that in his opinion the signatures on the returns were executed by petitioner. Petitioner, on the other hand, has offered no evidence, other than her statements that she does not remember signing the returns, to support her claim of forgery. She admits that the signatures resemble her own. We have given substantial weight to the testimony of the handwriting expert and have ourselves

examined the questioned signatures and compared them with the samples of petitioner's signature and handwriting contained in the record. We, too, are of the opinion that the signatures on the 1957 and 1958 returns are petitioner's.[5] Petitioner's claim of forgery must be rejected.

Petitioner's alternative contention is that she was tricked into signing the returns without her being aware of their true nature. To carry her burden of proving such trickery, petitioner relies largely upon her assertion that she would not knowingly have obligated herself to pay the taxes on John's income, in view of John's failure to meet his obligations to pay his creditors and to support her and her minor children. Petitioner alleges that John or someone acting in his behalf might have accomplished the trickery with respect to the 1957 return at the time when petitioner signed the agreement with Simpkins and the accompanying deed. Those papers were signed on June 16, 1958, the same date on which the St. Louis district director received the 1957 return. Petitioner speculates that she might even have signed the 1957 return when she signed the claim for refund of 1956 taxes, which claim was received by the St. Louis district director on March 17, 1958. As to the 1958 return, petitioner claims she might unknowingly have signed that when she signed the Form 870, accepting overassessments for 1952, 1954, 1955, and 1956. The Form 870 was received by the district director on June 25, 1959, 10 days after the 1958 return was received.

We are of the opinion that petitioner has failed to prove that her signatures on the 1957 and 1958 returns were procured by trickery. Petitioner was admittedly familiar with the appearance of Federal income tax return forms such as those in question, as well as with the tax savings resulting from the use of joint returns. Moreover, immediately below petitioner's signature on the 1957 return appears the legend "(If this is a joint return, wife's signature)." A similar phrase is printed immediately below the signature line on the 1958 return.[6] None of the other papers bears a close resemblance to a Form 1040. And although petitioner argues that opportunities existed for John or someone else to have obtained her signature on the returns, there

---

[5] In view of the convincing evidence that petitioner's signatures on the returns were not forged, we find it unnecessary to rely upon sec. 6064, which makes the fact that an individual's name is signed to a return prima facie evidence that the return was actually signed by such person.

[6] Respondent contends that one-half the proceeds of the sale of petitioner and John's interest in the Lindbergh Boulevard property was income to petitioner. He argues that the reporting of the entire taxable portion of such proceeds on the 1958 return labeled "John T. & Marie A. Dolan" and the failure of petitioner to file a separate return for 1958 provide further evidence that the 1958 return was intended as a joint return. We need not decide whether or not petitioner realized income from the transaction in question. We are satisfied that petitioner believed she did not have any income in 1958. Such being the case, respondent's argument is not persuasive. See *Elsie S. Bour*, 23 T.C. 237 (1954), acq. 1955–1 C.B. 3.

is no evidence concerning the circumstances surrounding her signing of the various papers which she claims might have been "shuffled." We know neither the dates on which she signed such papers, nor the persons present, nor the places of signing. Petitioner has not shown that John or anyone acting on his behalf was even present when petitioner signed the documents referred to. For all that appears, petitioner might have consulted with an attorney before signing any of the papers. In short, aside from admitting that she signed such papers, petitioner has presented no evidence which might tend to establish an opportunity for anyone to have tricked her into signing the returns in question. Mere speculation cannot take the place of evidence. Petitioner has the burden of proof as to this matter; she has not carried it.

We hold that petitioner must be treated as having filed joint returns with John for both 1957 and 1958.[7]

The second issue is whether the assessment of deficiencies against John on August 31, 1962, barred respondent from proceeding against petitioner with respect to the same deficiencies. Without deciding whether this issue is jurisdictional,[8] we hold, for the reasons hereinafter stated, that the assessment against John did not prevent respondent from establishing petitioner's liability for the deficiencies in question.

Section 6013[9] provides that the tax liability of a husband and wife who file a joint return shall be joint and several. Inasmuch as the statute nowhere spells out the consequences of joint and several liability, it has been held that Congress intended the common law rules to apply. *United States* v. *Wainer*, 211 F. 2d 669, 673 (C.A. 7, 1954).[10]

---

[7] Cf. *Emilie Furnish Funk*, 29 T.C. 279 (1957), this issue affirmed sub nom. *Furnish* v. *Commissioner*, 262 F. 2d 727 (C.A. 9, 1958).

[8] Compare *Kisting* v. *Commissioner*, 298 F. 2d 264, 268 (C.A. 8, 1962), affirming a Memorandum Opinion of this Court, with *Natalie D. Du Mais*, 40 T.C. 269 (1963).

[9] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, * * *

\* \* \* \* \* \* \*

(d) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

[10] In *Natalie D. Du Mais, supra*, the Court stated: "Although the liability of a husband and wife for a deficiency in respect of a joint return filed by them is joint and several *after such liability has been established*, any such liability for a deficiency can be established only in the manner which Congress has specifically prescribed." This statement is correct to the extent that it expresses the idea that respondent must comply with the directions of the statute to *enforce* the joint and several liability of the parties to a joint return. However, such statement should not be taken to imply that, absent statutory directions, the principles for enforcing the joint and several liability imposed by sec. 6013(d)(3) differ from the principles for enforcing joint and several liability at common law. (Naturally, such principles must be applied within the statutory framework.)

See *Hanover Bank* v. *Commissioner*, 369 U.S. 672, 687 (1962) ; *First Savings & Loan Association*, 40 T.C. 474, 482 (1963). One of the fundamental characteristics of joint and several liability is that the obligee, respondent here, may proceed against the obligors separately and may obtain separate judgments against each. *Armour & Co.* v. *Justice Dairy*, 311 S.W. 2d 555 (Ky. 1958) ; *Williams* v. *Reed*, 113 Cal. App. 2d 195, 248 P. 2d 147 (1952) ; 2 Williston, Contracts, sec. 328 (3d ed. 1959) ; Restatement, Contracts, sec. 119 (3) (1932) ; 50 C.J.S., Judgments, sec. 759, and the cases there cited. Of course, the obligee is only entitled to have the obligation satisfied once. 2 Williston, Contracts, sec. 328. For purposes of applying these rules to the instant case, we may consider an assessment entered by respondent as equivalent to a judgment, since both permit an obligee to enforce the collection of the obligation by seizure and sale of the obligor's property. See *Bull* v. *United States*, 295 U.S. 247, 260 (1935) ; *Pipola* v. *Chicco*, 169 F. Supp. 229 (S.D.N.Y. 1959), modified 274 F. 2d 909 (C.A. 2, 1960). Compare secs. 6303, 6321, 6322, 6323, 6331, and 6335 with, for example, Mo. Rev. Stat. secs. 511.350, 511.360, 511.440, 511.480, 513.020, 513.085, 511.090.

As a preliminary question, we must consider whether the assessment against John on August 31, 1962, was validly made. That assessment was made pursuant to a waiver executed by John of the restrictions on assessment contained in section 6213(a).[11] The waiver was evidenced by John's signature on Form 870, which form contained language indicating that it was intended to comply with section 6213(d).[12] Section 6213(d) gives the right to file a waiver to "the taxpayer." Where, as in the case before us, joint returns were filed by husband and wife, the question arises as to whether husband and wife are to be treated as separate taxpayers or as a single taxpaying entity. We believe

---

[11] SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

[12] SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

(d) WAIVER OF RESTRICTIONS.—The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary or his delegate, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

that there is ample reason and authority for holding that they should be treated as separate taxpayers.

Inasmuch as section 7701(a)(14) defines "taxpayer" merely as "any person subject to any internal revenue tax," it is clear that we must look further for a resolution of the question facing us. Section 6013, which permits a husband and wife to file a joint return, does not expressly support or reject the single entity concept. In fact, it seems clear that Congress did not specifically consider the problem in this context. As previously noted, however, section 6013(d)(3) imposes joint and several liability upon husband and wife who make a joint return. Since joint and several liability necessarily implies the existence of at least two entities, section 6013(d)(3) provides very strong support for the proposition that husband and wife remain separate taxpayers, even though they file a joint return. Furthermore, in the regulations setting forth the applicable rules for computing the income, deductions, and tax when joint returns are filed, it is provided, in part, sec. 1.6013–4(b), Income Tax Regs., "Although *there are two taxpayers on a joint return*, there is only one taxable income." (Emphasis added.) A substantially identical provision has been included in the regulations since 1949. Sec. 29.51–1(b)(1), Regs. 111, as amended by T.D. 5687, 1949–1 C.B. 9, 23. See also *Robert A. Coerver*, 36 T.C. 252 (1961), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962).

The case law also supports treating as separate "taxpayers" a husband and wife who have filed a joint return. In what appears to be the only case in which the single entity theory was expressly ruled upon, the court held that husband and wife who filed a joint return were separate taxpayers, so that an assessment entered pursuant to a notice of deficiency sent to the husband was ineffective as to the wife. *United States* v. *Hammerstein*, 20 F. Supp. 744 (S.D.N.Y. 1937). See *Charles E. Van Vleck*, 31 B.T.A. 433 (1934), affd. 80 F. 2d 217 (C.A. 2, 1935), certiorari denied 298 U.S. 656 (1936); *Harry Ekdahl*, 18 B.T.A. 1230 (1930), acq. IX–2 C.B. 18. Compare *Robert A. Coerver, supra*. This Court will accept separate petitions from the parties to a joint return, even though section 6213(a) and section 272(a)(1) of the 1939 Code provide that "the taxpayer" may petition for redetermination of a deficiency. *George Joannou*, 33 T.C. 868 (1960); *Alex H. Davison*, 13 T.C. 554 (1949); *Eva M. Manton*, 11 T.C. 831 (1948), acq. 1949–1 C.B. 3.

Since John was a separate "taxpayer" within section 6213(d), it follows that he had an absolute right at any time to waive the restrictions on assessment and collection contained in section 6213(a). See *United States* v. *Price*, 361 U.S. 304 (1960). John exercised this

right by executing, on or about June 29, 1962, a Form 870 [13] in respect of the deficiencies in question. Under section 6601(d)—

if notice and demand by the Secretary or his delegate for payment of such deficiency is not made within 30 days after the filing of such waiver, interest shall not be imposed on such deficiency for the period beginning immediately after such 30th day and ending with the date of notice and demand.

Thus, it seems clear that Congress contemplated that respondent would make notice and demand shortly after a waiver was filed under section 6213(d). Since, under section 6303(a),[14] assessment is made a prerequisite for notice and demand, it is clear that Congress also contemplated prompt assessment after a waiver is filed. The fact that no valid assessment could have been made against petitioner, who had filed no waiver, does not affect the validity of the assessment made against John.

We now return to the primary issue, i.e., whether respondent's assessment of deficiencies against John barred respondent from proceeding against petitioner with respect to the same deficiencies. Under section 6212(a),[15] respondent is authorized to send a notice of a deficiency only if he determines that there is a deficiency. Essentially, the issue turns on whether deficiencies, as defined by section 6211(a),[16] could exist as to petitioner after respondent had assessed the same deficiencies against John.

Under section 6211(a)(1)(B), the amount of what would otherwise be a deficiency must be reduced by "the amounts previously

---

[13] The following language appears at the bottom of the Form 870 executed by John:

"If executed with respect to a year for which a JOINT RETURN OF A HUSBAND AND WIFE was filed, this form must be signed by both spouses unless one spouse, acting under a power of attorney, signs as agent for the other."

Since neither the statute nor the regulations, sec. 301.6213–1(d), Proced. & Admin. Regs., require the signatures of both spouses, we view this language as superfluous. Petitioner's failure to sign the form does not affect its validity as a waiver by John.

[14] SEC. 6303. NOTICE AND DEMAND FOR TAX.

(a) GENERAL RULE.—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

[15] SEC. 6212. NOTICE OF DEFICIENCY.

(a) IN GENERAL.—If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by registered mail.

[16] SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term "deficiency" means the amount by which the tax imposed by subtitles A or B exceeds the excess of—

    (1) the sum of

        (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

        (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

    (2) the amount of rebates, as defined in subsection (b)(2), made.

assessed (or collected without assessment) as a deficiency." It is arguable that in computing the amount of a deficiency in the tax of one of two spouses who made a joint return, such deficiency should be reduced by amounts assessed as a deficiency against the other spouse. Nevertheless, we are of the opinion that it is far more logical and more consistent with the statutory scheme to give credit under section 6211(a)(1)(B) only for amounts previously assessed against the taxpayer with respect to whom the computation of a deficiency is being made.

In the first place, it seems apparent from the language of section 6203 and the regulations thereunder [17] that an assessment is intended to have significance only with respect to the taxpayer whose liability is assessed. John and petitioner are separate taxpayers. We see no reason to construe section 6211(a) as reducing the deficiencies in the tax of one taxpayer by assessments made against a different taxpayer, especially where there is no evidence that such a construction was intended by Congress.

Our conclusion is not altered by the fact that, under the parenthetical phrase in section 6211(a)(1)(B), the deficiencies in petitioner's tax would have been reduced by any amounts collected from John prior to the mailing of the statutory notice to petitioner. The reason for this provision is that, even though John and petitioner are jointly and severally liable for any deficiencies with respect to their joint returns, there is only one obligation for each year. Respondent is entitled to only one satisfaction of that obligation. Since payment by either spouse effects a *pro tanto* extinguishment of the obligation, the parenthetical phrase in section 6211(a)(1)(B) is wholly consistent with the joint and several liability of the spouses. To hold, however, that an assessment against John also had the effect of reducing the deficiency

[17] SEC. 6203. METHOD OF ASSESSMENT.

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary or his delegate in accordance with rules or regulations prescribed by the Secretary or his delegate. Upon request of the taxpayer, the Secretary or his delegate shall furnish the taxpayer a copy of the record of the assessment.

SEC. 301.6203-1 Method of assessment.

The district director and the director of the regional service center shall appoint one or more assessment officers. The district director shall also appoint assessment officers in a Service Center servicing his district. The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

[As amended by T.D. 6585, 1962-1 C.B. 290. The amendments were not material to the point at issue.]

as to petitioner would be inconsistent with the principles of joint and several liability. This is because, as we have already pointed out, an assessment is comparable to a judgment; and an unsatisfied judgment against one obligor does not discharge a coobligor who is jointly and severally liable. 2 Williston, Contracts, sec. 328; Restatement, Contracts, sec. 119 (3).

A further indication that the statute contemplates an assessment which is effective against one party to a joint return but does not hamper enforcement of the liability of the other spouse, is found in section 6871 (a).[18] Section 6871 (a) requires the immediate assessment of any unassessed deficiency in income, estate, or gift taxes of taxpayers in respect of whom certain bankruptcy or receivership proceedings have been instituted. The assessment is to be made despite the restrictions imposed by section 6213 (a) ; there is no express provision allowing similar assessment against the spouse of such a taxpayer. It hardly seems likely that Congress would have required, in section 6871(a), immediate assessment against a bankrupt taxpayer, if Congress had believed that such an assessment would, under section 6211(a), have prevented respondent from proceeding against the spouse of the bankrupt.

Accordingly, we hold that, in the case of a joint return, the determination as to whether there is a deficiency within the meaning of section 6211(a) must be made separately for each spouse, and prior assessments against one spouse are not to be considered in making the computation with respect to the other spouse. It follows, then, that on October 9, 1962, there were deficiencies in petitioner's 1957 and 1958 income taxes, and that the statutory notice mailed to petitioner on that date was not invalidated by the prior assessment of the same deficiencies against John.

Petitioner contends that respondent, by entering assessments against John, elected to look only to him for satisfaction of the deficiencies. Petitioner cites *Bledsoe* v. *Nickles*, 91 S.W. 2d 184 (Mo. App. 1936), where the court stated that "liability of the defendants in this case was either joint or several, at the plaintiffs' election." The cases and statute

---

[18] SEC. 6871. CLAIMS FOR INCOME, ESTATE, AND GIFT TAXES IN BANKRUPTCY AND RECEIVERSHIP PROCEEDINGS.

(a) IMMEDIATE ASSESSMENT.—Upon the adjudication of bankruptcy of any taxpayer in any liquidating proceeding, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided by law) determined by the Secretary or his delegate in respect of a tax imposed by subtitle A or B upon such taxpayer shall, despite the restrictions imposed by section 6213(a) upon assessments, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law.

[As amended by sec. 88(a) and sec. 1(c)(2), Technical Amendments Act of 1958.]

cited by the court as authority for this proposition make it clear that, at the most, the court was referring to the old common law rule that the plaintiff could not secure both a joint judgment and several judgments upon the same obligation. See *United States* v. *Ames*, 99 U.S. 35, 46 (1878). Compare Restatement, Contracts, sec. 119 (1). We can find no support, either in the law of Missouri or in the general principles of the law of joint and several obligations, for the proposition that obtaining a several judgment against one of two jointly and severally liable obligors constitutes an election which prevents the obligee from later obtaining a several judgment against the second obligor. Indeed, as hereinabove set forth, the rule is otherwise. There is no reason why an assessment should have different consequences in this regard than a judgment.

Furthermore, the doctrine of election of remedies is applicable only where the remedies are inconsistent. *Estate of Samuel Stein*, 37 T.C. 945, 952 (1962). There could be no inconsistency in entering assessments against John, then proceeding against petitioner, since John and petitioner were jointly and severally liable for the tax.

There is absolutely no merit in petitioner's contention that respondent, by assessing the deficiencies against John in reliance upon the waiver of restrictions filed by John, entered into a closing agreement under section 7121 which barred respondent from proceeding against petitioner. Form 870 states on its face that it is not a closing agreement; it was not transformed into one by respondent's actions in assessing the deficiencies. The assessment against John, far from discharging him, formally established his liability for the deficiencies involved. Nor is it arguable that respondent's actions amounted to a release of or compromise with John, which release or compromise might inure to the benefit of petitioner. See sec. 7122; 2 Williston, Contracts, secs. 334–341. Compare Mo. Rev. Stat., sec. 431.150.

Petitioner's contention that the assessments against John constituted an election of remedies must, therefore, be rejected.

The third and final issue presented is whether respondent's failure to send to petitioner either a joint notice of deficiency or a duplicate original of a joint notice deprives this Court of jurisdiction over petitioner. Petitioner, relying on *Natalie D. Du Mais*, 40 T.C. 269 (1963), contends that the notice sent to her did not comply with section 6212 (b) (2) and that the defect in the notice deprives us of jurisdiction. Respondent argues that the notice fully complied with the statute. Respondent recognizes that *Du Mais* is indistinguishable from the present case, but he urges that our decision therein was erroneous and should be disapproved. The parties have stipulated that the notice of deficiency mailed to petitioner on October 9, 1962, was neither a joint notice nor a duplicate original of a joint notice. The

only question is whether section 6212(b)(2)[19] authorizes respondent to send a separate notice of deficiency to one of two spouses who have made a joint return, when the other spouse is not entitled to a notice of deficiency.

The language of section 6212(b)(2), set forth in footnote 19, *supra*, is not entirely free from ambiguity. Nevertheless, the meaning which most naturally flows from such language is that, in the case of a deficiency in respect of a joint return, respondent may send separate notices or he may send a single joint notice; but if he wishes to send a joint notice and has been notified that the spouses have established separate residences, he must send a duplicate original of the joint notice to each spouse. The statute does not expressly forbid respondent from sending separate notices to the spouses or to one of them, even if respondent has been notified of separate residences.

That the natural interpretation of section 6212(b)(2) was the one intended by Congress is indicated by the legislative history. The report of the House Ways and Means Committee, explaining section 272(a) of the Revenue Act of 1938, the original version of present section 6212(b)(2), reads as follows:

To conform to section 51(b) of the bill, which expressly provides for joint and several liability in the case of a husband and wife who file a joint return, express provision is made in section 272(a) of the bill for the sending of a joint notice of deficiency *if the Commissioner in his discretion desires to send a joint notice instead of separate notices of the deficiency*. This accords with the established procedure under the Revenue Act of 1936 and prior acts. The committee feels, however, that, in the interests of fairness, an exception to such established procedure should be made in cases where, subsequent to the filing of the joint return and prior to the notice of deficiency, the spouses have established separate residences and notice of such fact has been given to the Commissioner. The last sentence of section 272(a) of the bill accordingly provides that a single joint notice may be sent in the general case but that, if the Commissioner has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, duplicate originals must be sent by registered mail to each of the spouses at his last known address. [H. Rept. No. 1860, 75th Cong., 3d Sess., p. 48 (1938). Emphasis supplied.]

---

[19] SEC. 6212. NOTICE OF DEFICIENCY.

   (b) ADDRESS FOR NOTICE OF DEFICIENCY.—

    (1) INCOME AND GIFT TAXES.—In the absence of notice to the Secretary or his delegate under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A or chapter 12, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation has terminated its existence.

    (2) JOINT INCOME TAX RETURN.—In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary or his delegate has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

[Par. (2) as amended by sec. 89(b), Technical Amendments Act of 1958.]

This report leaves no doubt as to the meaning of section 6212(b) (2). The provision relating to the sending of duplicate originals of joint notices where respondent has been notified that the spouses have separate addresses clearly was intended to assure that each spouse received actual notice, if respondent chose to send a joint notice of deficiency. There was no intention, however, to forbid respondent from sending separate notices, regardless of the addresses of the spouses. Further authority for this interpretation of the statute is found in *Kisting* v. *Commissioner*, 298 F. 2d 264 (C.A. 8, 1962), affirming a Memorandum Opinion of this Court. See also *Dudley H. Bryant*, 33 T.C. 201 (1959).

After John had filed a waiver of the restrictions on assessment of the deficiencies here in issue, he was no longer entitled to receive a statutory notice in respect of such deficiencies. Moreover, after respondent had entered the assessments against John, there were no longer any deficiencies in John's income taxes for 1957 and 1958, the deficiencies having been eliminated by the act of assessment. See sec. 6211(a). Under these circumstances, absolutely no purpose could be served by requiring respondent to send John any form of statutory notice of deficiency. Furthermore, keeping in mind that section 6212(b) is entitled "Address for Notice of Deficiency," there could be no purpose served by requiring that John's name appear at all on the address of the notice of deficiency sent to petitioner, so long as petitioner was clearly apprised that the deficiency being asserted related to the joint returns of John and petitioner. In the instant case, the notice of deficiency made reference to an attached statement, which was headed as follows:

>Mr. John T. Dolan
>Mrs. Marie A. Dolan
>(Husband and Wife)
>1101A Ralph Terrace
>Richmond Heights 17, Missouri

We believe the statutory notice of deficiency was wholly adequate to inform petitioner of the nature of the liability asserted.

Section 301.6212–1(b) (2), Proced. & Admin. Regs., though lending some support to petitioner's position, should not be deemed to vary the rule laid down by the statute itself and described above. In the first place, a comparison of section 272(a) of the Revenue Act of 1938 [20] with

---

[20] SEC. 272. PROCEDURE IN GENERAL.

(a) PETITION TO BOARD OF TAX APPEALS.— * * * In the case of a joint return filed by husband and wife such notice of deficiency may be a single joint notice, except that if the Commissioner has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, duplicate originals of the joint notice must be sent by registered mail to each spouse at his last known address.

article 272–1, Regs. 101 [21] (the original version of sec. 301.6212–1(b) (2)), indicates that the regulation was intended only to paraphrase, not to limit, the statute. In the second place, no rational end would be served by so construing this ambiguous regulation as to require something more than compliance with the purpose of the statute. The purpose of section 272(a) of the Revenue Act of 1938, as revealed by the legislative history quoted above, was to assure that each taxpayer received fair notice of the nature of the deficiency being asserted against him. Where, as in the instant case, the notice of deficiency was clearly calculated to convey such notice, the addition of the husband's name to the face of the notice would add nothing. This is particularly so where the husband is not entitled to a statutory notice.[22] Finally, where there is no doubt that the petitioner in fact received adequate notice of the deficiency, we would be extremely reluctant to hold the statutory notice invalid on account of a defect as minor as the one herein alleged, even if we were convinced that such a defect existed. *Kisting* v. *Commissioner, supra* at 268.

The material facts in *Natalie D. Du Mais, supra*, appear indistinguishable from those of the instant case. We should point out, however, that in *Du Mais* respondent filed a statement conceding that the Court lacked jurisdiction over the case. There is no indication that the attention of the Court was directed to the legislative history of section 6212(b) (2). In any event, we are convinced that the decision in *Du Mais* was predicated upon an erroneous interpretation of the statute, and is hereby overruled.

Reviewed by the Court.

*Decision will be entered for the respondent.*

BRUCE, *J.*, concurs in the result.

———

DAWSON, *J.*, concurring: While I am in complete accord with the majority opinion, I wish to add the following comments.

The *Du Mais* opinion was apparently based on the premise that in the case of a joint return the liability of the spouses in the event of a

---

[21] Art. 272–1. Assessment of a deficiency.— * * * If a joint return has been filed by husband and wife the Commissioner may, unless he has been notified by either spouse that a separate residence has been established, send either a joint or separate notice of deficiency. If, however, the Commissioner has been so notified, a separate notice of deficiency, that is, a duplicate original of the joint notice, must be sent by registered mail to each spouse at his or her last known address. * * *

[22] It would certainly be requiring a useless act to have respondent send duplicate originals of a joint notice, where one spouse is not entitled to any notice. In fact, it is questionable whether the regulation was intended to apply at all to this uncommon set of circumstances.

deficiency can only be established by issuing to them a joint notice under the provisions of section 6212(b)(2). This premise, as I view it, did not give proper consideration to three principles of law:

First, even though a husband and wife may file a joint return, they remain separate and distinct taxpayers. *Van Vleck* v. *Commissioner*, 80 F. 2d 217 (C.A. 2, 1935), affirming 31 B.T.A. 433 (1934). The essential characteristic of joint and several liability is that a creditor may, *at his option*, sue each party to such liability separately, or all parties together. *Sessions* v. *Johnson*, 95 U.S. 596 (1877).

Second, other sections of the Internal Revenue Code, i.e., secs. 6871 (a) and 6213(d), permit the assessment of deficiencies under certain specified circumstances without the mailing of a notice of deficiency. Take this example. A husband and wife file a joint income tax return. An examination is made of the return and it is determined that a deficiency exists. Before a deficiency notice can be sent, the husband alone is placed in bankruptcy. If it is concluded that the husband is a separate taxpayer for the purpose of section 6871(a), the Commissioner is permitted to make an immediate assessment against the husband, and the obvious purpose of the section is fulfilled. H. Rept. No. 1, 69th Cong. (1925), 1939–1 C.B. 355. If, however, it is concluded that the filing of a joint return creates not two separate taxpayers, but only one, then the Commissioner cannot avail himself of section 6871, a result which is attributable to the fact that the taxpayer entity, consisting of husband and wife, is not itself in bankruptcy. It is evident that adoption of the latter conclusion would not only place an unnecessary limitation on section 6871 but would seriously hinder the purpose for which the section was enacted. The same thing would be true with respect to section 6213(d). See *United States* v. *Price*, 361 U.S. 304 (1960).

Third, section 6212(b)(2) is not an independent section that operates in a vacuum, but rather a component part of section 6212, and its applicability is subject to the same prerequisites as section 6212. Section 6212(b)(2) presupposes the existence of a deficiency, because, if there is no deficiency, a notice of deficiency cannot be mailed and, if a notice of deficiency cannot be mailed, the manner of addressing the notice becomes completely irrelevant.

The application of these principles of law to the facts of *Du Mais* plainly demonstrates the incorrect conclusion reached in that case. In *Du Mais*, the deficiencies were assessed against the husband, who was a separate taxpayer, pursuant to the waiver provisions of section 6213(d). Since the wife, who was also a separate taxpayer, would not execute a similar Form 870 waiver, it became necessary to issue a notice of deficiency to her. However, although the wife was entitled to receive a notice of deficiency in accordance with section 6212(a)

since a deficiency still existed with respect to her, the husband was not entitled to a notice of deficiency for two reasons: (1) He had executed a Form 870 and had thereby waived the restrictions on assessment and collection of the deficiencies, including the right to receive a notice of deficiency; and (2) after the assessment, no deficiency, as defined by section 6211, existed against the husband and a notice of deficiency to him purporting to determine such a deficiency would not be authorized by section 6212(a). See *Stanley A. Anderson*, 11 T.C. 841 (1948). Since the husband and wife were not both entitled to the notice of deficiency authorized by section 6212(a), the provisions of section 6212(b)(2) were inapplicable. Consequently, it seems clear to me that the Commissioner's issuance of a separate notice of deficiency to Natalie Du Mais was not only valid, but it was the only form of action compatible with the deficiency and assessment provisions of the Internal Revenue Code.

For the reasons articulated so effectively in the majority opinion and for the added reasons mentioned here, I believe the *Du Mais* decision was erroneous and that the rationale of *Kisting* is sound. The result reached here is right.

———

PIERCE, *J.*, dissenting.

This Court, in my opinion, lacks jurisdiction to decide this case, for the following reasons:

A. For each of the taxable years here involved, the petitioner and her husband filed a joint income tax return. Therefore, under the applicable statute and regulations hereinafter cited, the gross incomes and deductions of both spouses, and also the tax imposed thereon, must all be *computed on an aggregate basis;* and although there are *two taxpayers*, there is *only one taxable income* in respect of which any deficiency in the tax may be determined.

B. Prior to the issuance of the notice of deficiency herein, 100 percent of the deficiency computed in respect of said "one taxable income," had been assessed. Accordingly under section 6211 of the 1954 Code, there remained no "deficiency"; and in the absence of any such "deficiency" which this Court could "redetermine" under section 6213, the Court lacks jurisdiction to decide the case.

C. Prior to the issuance of the notice of deficiency herein, the Secretary or his delegate had been notified that the spouses who had filed the joint return had established separate residences; and in such circumstance, section 6212(b)(2) of the Code required that "a duplicate original of the joint notice [of deficiency] *shall* be sent by certified mail or registered mail *to each spouse* at his last known address." (Emphasis supplied.) In the instant case, however, this express requirement of the statute was not met; and in the absence of the required

statutory notices to both spouses, one of the essential prerequisites to this Court obtaining jurisdiction is lacking.

In support of the foregoing, the following is submitted.

*I*

It should be observed at the outset, that we are here concerned with those provisions of the Internal Revenue Code of 1954 which control and govern the procedures that must be applied in determining "deficiencies" in respect of income taxes of taxpayers, in issuing statutory notices of any such "deficiencies," and in providing the prerequisites for this Court's jurisdiction under section 6213 of the Code to make a "redetermination" of any such "deficiencies." The construction and application of said statutory procedures is entirely a matter of Federal law, and not of local law. This is made clear by the following decisions of the Supreme Court: *Burnet* v. *Harmel*, 287 U.S. 103, 110:

Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. *It is the will of Congress which controls*, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a *uniform application to a nation-wide scheme of taxation*. * * * State law may control only when the operation of the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * * [Emphasis supplied.]

*Lyeth* v. *Hoey*, 305 U.S. 188, 193–194:

The question as to the construction of the * * * federal statute is not determined by local law. We are not concerned with the peculiarities and special incidences of state taxes or with the policies they reflect. * * *

In the instant case, this Court has not, in my opinion, followed and applied the above-mentioned procedural requirements of the Code. Rather, it has changed or modified these Federal statutory procedures, by resort to principles of common law, to principles of local law including the law of the State of Missouri, to textbooks dealing with non-Federal problems, and to comparisons with judgments obtained under local laws—all as shown by numerous citations and statements throughout the majority opinion.

In my opinion, this approach of the majority of the Court is unwarranted. For, since Congress has prescribed with particularity the procedural prerequisites to this Court obtaining jurisdiction, such prescriptions are controlling; and it is neither proper nor necessary to have recourse to other procedures employed under local laws. If for any reason, the Commissioner should conclude that said prescribed statutory procedures should be amended or modified, he should present his suggestions in this regard to the Congress, and not to this Court.

## II

The first prerequisite to this Court obtaining jurisdiction under section 6213(a) of the 1954 Code, is that there must be a "deficiency" as defined in section 6211(a) of the Code. In the instant case, no such "deficiency" existed, either at the time of the issuance of the notice of deficiency herein or at the time of the filing of the petition with this Court; for at each of these times, 100 percent of the deficiency previously determined in respect of the joint income tax returns here involved, had already been assessed—thereby eliminating any "deficiency" in respect of said joint returns.

1. Section 6013(a) provides that a husband and wife may (subject to exceptions not here material) make a single joint return of income taxes, even though one of the spouses has neither gross income nor deductions; and subparagraph (d)(3) of this section then further provides that, in such circumstance, *the tax shall be computed on the aggregate income of both spouses*, and the *liability* with respect to the tax shall be *joint and several*.

The regulations under this section (Income Tax Regs., sec. 1.6013–4) implement the statute as follows:

(b) *Computation of income, deductions, and tax.* If a joint return is made, the gross income and adjusted gross income of husband and wife on the joint return *are computed in an aggregate amount* and the deductions allowed and *the taxable income* are *likewise computed on an aggregate basis.* * * * Although there are *two taxpayers* on a joint return, *there is only one taxable income. The tax on the joint return shall be computed on the aggregate income* and *the liability with respect to the tax shall be joint and several.* * * * [Emphasis supplied.]

It follows from the foregoing that, where a joint return has been filed (as was the situation for each of the taxable years here involved), there can be one, and only one, *tax imposed in respect of the single aggregate taxable income of both the spouses;* and it further follows that if there is any "deficiency" in respect of the *tax so imposed*, it can be *only a single deficiency* for which both spouses are jointly and severally liable—and not two separate and identical deficiencies (one for each spouse) against which any credits for assessments or payments in respect of the single tax imposed, will be applied for the benefit of only one spouse to the exclusion of the other.

2. Section 6211(a) of the Code defines the term "deficiency"; and it also specifies how any amounts previously assessed (or collected without assessment) as a deficiency, must be credited against the single tax imposed. This section reads:

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term "deficiency" means the amount by which *the tax imposed* by subtitles A and B exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the *amounts previously assessed* (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b) (2), made.
[Emphasis supplied.]

It follows from the foregoing that, if 100 percent of any deficiency *in the tax imposed* has been assessed prior to the issuance of notice of deficiency, there can be no remaining "deficiency" in respect of the tax imposed. It further follows that in the absence of a statutory "deficiency," there is nothing to be "redetermined" by this Court under section 6213; and accordingly this Court lacks jurisdiction. *Stanley A. Anderson*, 11 T.C. 841.

From and after assessment of 100 percent of the "deficiency," the situation becomes solely a matter of collection; and this is a matter that is vested solely in the administrative authorities, and which is wholly outside the jurisdiction of this Court. Indeed, under section 6211(a), *supra*, assessment is placed on parity with payment, so far as the determination of a statutory "deficiency" is concerned.

3. In the instant case, 100 percent of the deficiency initially determined in respect of the tax imposed on each of the joint returns here involved, was assessed on August 31, 1962, which was prior to the issuance of the notice herein on October 9, 1962.

The majority of the Court attempted, in the course of its opinion, to meet this situation by concluding (erroneously, I believe) that—

the determination as to whether there is a deficiency within the meaning of section 6211(a) must be made *separately for each spouse*, and prior assessments *against one spouse* are not to be considered in making the *computation with respect to the other spouse.* * * * [Emphasis supplied.]

The Court, in adopting this approach which contemplates *two separate deficiencies* for the spouses and which also contemplates separate credits in respect of each spouse, failed to give effect to the above-mentioned statutory scheme which Congress has provided, that there is one, and only one, single taxable income and only one single unitary tax imposed thereon. In this connection, see *Anderson* v. *United States*, 15 F. Supp. 216, 225, wherein the Court of Claims explained the method by which income tax assessments are made; and in which it held that the assessment contemplated by the statute is an assessment *of the tax*, and not an assessment *of the taxpayer*.

### III

The second prerequisite to this Court obtaining jurisdiction, is that a valid statutory notice (or notices) of any deficiency in the tax imposed on the joint return, shall be given to *both* spouses in the par-

ticular manner which Congress has prescribed. In my opinion, this prerequisite has not here been met.

1. In the instant case, the Court found as a fact, that prior to the issuance of the notice of deficiency herein, respondent had been notified that the two spouses had established separate residences at separate addresses. The Court further found as a fact that, notwithstanding this situation, respondent did not mail to the husband any statutory notice of deficiency whatsoever; and also that the notice mailed to the wife was neither a joint notice nor a duplicate original of a joint notice.

2. Section 6212 of the Code, which governs the necessity for the issuance of statutory notices of deficiency, provides in material part as follows:

SEC. 6212. NOTICE OF DEFICIENCY.

(a) IN GENERAL.—If the Secretary or his delegate determines that there is a deficiency in respect of *any tax imposed* by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

(b) ADDRESS FOR NOTICE OF DEFICIENCY.—

\* \* \* \* \* \* \*

(2) JOINT INCOME TAX RETURN.—In the case of a joint income tax return filed by husband and wife. such notice of deficiency may be a single joint notice, *except that if the Secretary or his delegate has been notified by either spouse that separate residences have been established,* then, *in lieu of the single joint notice, a duplicate original of the joint notice shall be sent* by certified mail or registered mail *to each spouse* at his last known address.
[Emphasis supplied.]

The Procedure and Administration Regulations have implemented these statutory provisions, as follows:

SEC. 301.6212–1. Notice of deficiency.

(2) *Joint income tax returns.* If a joint income tax return has been filed by husband and wife, the district director (or assistant regional commissioner, appellate) may, *unless* the district director for the district in which such joint return was filed has been notified by either spouse that a separate residence has been established, send either a joint or separate notice of deficiency to the taxpayers at their last known address. If, however, the proper district director has been so notified, *a separate notice of deficiency, that is, a duplicate original of the joint notice, must be sent* by registered mail prior to September 3, 1958, and by either registered or certified mail on and after September 3, 1958, *to each spouse* at his or her last known address. The notice of separate residences should be addressed to the district director for the district in which the joint return was filed. [Emphasis supplied.]

Moreover, the report of the House Ways and Means Committee, respecting the Revenue Act of 1938, which contained in section 272(a) thereof the cognate provision to section 6212(b)(2) of the 1954 Code, explained the intent of said provisions. In this report, the committee pointed out that, in the usual joint return case, the notice of deficiency

might take the form of either a joint notice to both spouses, or separate notices to these spouses, provided that notice, in one form or the other, is sent to *both spouses*. The committee then further stated as follows:

The committee feels, however, that, *in the interests of fairness, an exception to such established procedure should be made* in cases where, subsequent to the filing of the joint return and prior to the notice of deficiency, the spouses have established separate residences and notice of such fact has been given to the Commissioner. The last sentence of section 272(a) of the bill accordingly provides that a single joint notice may be sent in the general case but that, if the Commissioner has been notified by either spouse that separate residences have been established, *then, in lieu of the single joint notice, duplicate originals must be sent by registered mail to each of the spouses at his last known address.* [H. Rept. No. 1860, 75th Cong., 3d Sess., p. 48 (1938). Emphasis supplied.]

The conclusion to be drawn from the foregoing statute, regulations, and legislative history is that, in any case where a deficiency is determined in respect of a joint income tax return, notice of such deficiency must be issued in one form or another, *to both spouses* by registered or certified mail.

3. In the instant case, the evidence establishes and this Court has found as a fact, that *no statutory notice of any kind or character was sent to the husband with respect to the joint return;* and that even the notice sent to the wife alone, was neither a joint notice nor a duplicate original of a joint notice. Thus, in my opinion, there was here no compliance with the requirements of the statute. And since the notice issued herein did not meet the statutory requirement, it follows that this Court lacks jurisdiction under section 6213 to decide the present case.

The majority of the Court, in an effort to overcome this obvious situation, has concluded that, since the husband had theretofore filed a waiver of restrictions on assessment and collection of 100 percent of the deficiency in respect of the joint return, he was not entitled to received any statutory notice. But there are two errors in this conclusion. First, the waiver (which is in evidence as Exhibit 6) did not waive the husband's right to receive notice of any deficiency which might thereafter be issued in respect of the joint return; rather, it waived only the statutory restrictions on immediate *assessment and collection* of the deficiencies on the joint returns.

Secondly, it must be kept in mind that the Congress, in enacting the statutory procedural requirements here involved, was establishing a procedure that was to have uniform application in *all* joint return cases; and it may not properly be assumed that Congress, in so acting, meant anything other than it said. Also, it cannot properly be assumed that noncompliance with said statutory procedures will, in all cases, result in no prejudice to the spouses involved. To the con-

trary, assume, for example, a situation where the spouses had separated and were living in different parts of the country, and where neither spouse is familiar with the actions of the other. In such situation, if the husband should waive the restrictions on assessment of 100 percent of the joint return deficiency with a view to thereafter suing in a District Court for any amounts collected on such assessments, and if thereafter the Commissioner should, without any notice to the husband, issue a notice of deficiency to the wife only and she then files a petition to this Court with respect to such notice, prejudice might result to both spouses. As regards the wife, she, being without knowledge that the joint return tax had already been fully assessed, might be deprived of an opportunity to plead in defense, that the joint return deficiency had already been eliminated by such assessment. And as regards the husband, on the other hand, he too might be prejudiced, by having the amount of the joint return deficiency increased during the course of the trial of the wife's case before this Court; or by having new claims to penalties for fraud or other causes, approved by this Court during the course of the wife's proceeding, solely on the basis of concessions or testimony presented during the wife's proceeding, wholly without his knowledge. In addition, the husband's contemplated action in a District Court might be prejudiced by reason of this Court's decision in the wife's case, as to which he had no knowledge.

Thus, the only way to provide adequate protection for both spouses who are jointly and severally liable for the joint return tax, is to make sure that the procedures which Congress has prescribed for reasons satisfactory to itself, are strictly applied and enforced. That was not done in the instant case.

Finally, I deem it necessary to point out that the case of *Kisting* v. *Commissioner*, 298 F. 2d 264 (C.A. 8), upon which the majority of the Court so strongly relies, is distinguishable; for there, as the Eighth Circuit pointed out in its recital of the facts, a statutory notice of the deficiency involved was mailed *to each of the spouses* as required by the statute, and the only jurisdictional issue pertained to the *form* of the notices so issued *to both spouses*.

## IV

The case of *Natalie D. Du Mais*, 40 T.C. 269 (1963), involved a question of jurisdiction and facts which were substantially the same as those in the instant case. There, as in the present case, the Commissioner had mailed a notice of deficiency in respect of a joint return to the wife only, without sending any statutory notice of any kind to the husband; and thereafter, the wife had filed a petition with this Court in respect of the notice which she had received.

Subsequently, after the foregoing facts bearing on this Court's jurisdiction had been fully developed through use of a show-cause order, the Commissioner submitted the following concession:

After careful consideration of all the facts of the case, and the law as applicable to these facts, the respondent agrees with the Court that in this case the Tax Court lacks jurisdiction.

This Court, in thereupon dismissing the wife's case for lack of jurisdiction, made the following statement in its published opinion:

In the instant case, the Commissioner *attempted to establish joint and several liability* for deficiencies in respect of joint returns, without issuing either a joint statutory notice of deficiency or duplicate originals of a joint notice to each spouse—and indeed, *without giving any statutory notice whatsoever to one of the joint makers of the returns involved.* This does not meet the requirements of the controlling statutes. [Emphasis supplied.]

The Commissioner has not, at any time since, published any renunciation of his concession that the Court lacked jurisdiction in said case; and also he has not, at any time since, published any nonacquiescence with respect to the decision entered in that case.

I have found no published decision of any court which is contrary to the above-mentioned decision in the *Du Mais* case. I believe that said decision was correct; and that it should have been followed in the instant case.