Joseph F. KISTING, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16825.

United States Court of Appeals
Eighth Circuit.

Jan. 23, 1962.

---

**266**

William Elden, Chicago, Ill., made argument for petitioner and was on the brief.

Earl Silbert, Atty., Dept. of Justice, Washington, D. C., made argument for respondent. Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, and Lee A. Jackson, I. Henry Kutz, and Giora Gen-Horin, Dept. of Justice, Washington, D. C., were on the brief.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and GRAVEN, District Judge.

GRAVEN, Senior District Judge.

The petitioner, Joseph F. Kisting, has brought up for review a decision of the Tax Court of the United States which sustained the action of the Commissioner in assessing additional income taxes and penalties against the petitioner for the taxable years of 1951 and 1953. Many of the facts were stipulated. In addition, the petitioner testified before the Tax Court and also presented testimony of other witnesses.

During the years of 1951 and 1953 the petitioner was the purchasing agent for the Dubuque Packing Company at Dubuque, Iowa. The Tax Court found that during those years the petitioner, through various conduits, received "kickbacks" from suppliers who sold supplies to the Dubuque Packing Company and that those "kickbacks" represented taxable income to him which he did not report in his federal income tax returns. In addition, the Tax Court found that certain unexplained deposits and payments represented taxable income to him which he did not report in those returns. The Commissioner determined deficiencies against the petitioner and his wife, Virginia S. Kisting, for the tax years of 1951 and 1953 in the following amounts:

| Year | Deficiency | Section 293(b) Addition to Tax | Section 294(d)(2) Addition to Tax | Total |
|---|---|---|---|---|
| 1951 | $ 6,924.73 | $ 3,462.37 | $ 423.86 | $10,810.96 |
| 1953 | 20,191.70 | 10,095.85 | 1,230.18 | 31,517.73 |

Section 293(b) of Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b), provides for a fifty per cent fraud penalty. Section 294(d) (2) of Internal Revenue Code of 1939 provides for a six per cent penalty for a substantial understatement of estimated tax. The Tax Court upheld the determinations of the Commissioner above set out.*

* Pursuant to a stipulation setting forth an agreed computation for entry of decision, the deficiencies and penalties for 1953 were changed from those listed above to the following:

| Year | Deficiency | Section 293 (b) Addition to Tax | Section 294 (d) (2) Addition to Tax | Total |
|---|---|---|---|---|
| 1953 | $18,576.56 | $ 9,303.16 | $1,133.27 | $29,012.99 |

The petitioner urges several grounds for reversing the Tax Court's determination. He contends that the Tax Court was lacking in jurisdiction. He also contends that the Tax Court erred in finding that he had understated his net income for the taxable years 1951 and 1953; in finding that penalties were properly assessed for substantial understatement of estimated tax; in finding that fraud penalties were properly assessed; and in permitting the introduction into evidence of the fact that a nolo contendere plea had been entered by the petitioner in a criminal action in the United States District Court for the Southern District of Iowa in which he was charged with wilfully and knowingly attempting to evade and defeat the payment of federal income taxes owing by himself and his wife, Virginia S. Kisting, for the years of 1952 and 1953, in violation of Section 145(b) of the Internal Revenue Code of 1939.

■ The jurisdictional issue will be first considered. The petitioner and his wife filed joint federal income tax returns for the years of 1951 and 1953 with the District Director of Internal Revenue at Des Moines, Iowa. The deficiencies and penalties referred to were assessed against both the petitioner and his wife. The petitioner then petitioned the Tax Court for redetermination of those deficiencies and penalties. The contention of the petitioner as to the Tax Court's jurisdiction concerns the notice of deficiency sent out by the Commissioner in relation to those deficiencies and penalties. Section 6212(b) (2), Internal Revenue Code of 1954, 26 U.S.C.A. § 6212(b) (2), provides as follows:

> "*Joint income tax return.*—In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary or his delegate has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by registered

mail to each spouse at his last known address."

The corresponding Treasury Regulation, Section 301.6212–1(b) (2), provides, in part, as follows:

> "*Joint income tax returns.* If a joint income tax return has been filed by husband and wife, the district director * * * may, unless the district director for the district in which such joint return was filed has been notified by either spouse that a separate residence has been established, send either a joint or separate notice of deficiency to the taxpayers at their last known address."

During the pertinent period of time, the petitioner and his wife resided together at 2537 Windsor Avenue, Dubuque, Iowa. William Elden, an attorney whose office was in Chicago, Illinois, had been engaged by the petitioner as his attorney in connection with income tax matters. The petitioner had executed a power of attorney to Mr. Elden. In that power of attorney the petitioner directed that all correspondence be sent to Mr. Elden at his Chicago office. That power of attorney was either furnished to the Internal Revenue Service or made known to it. The deficiency notice involved in the present case was dated June 28, 1958. It was sent by registered mail to:

> "Mr. Joseph F. Kisting
> c/o Mr. William Eldon [*sic*]
> One No. LaSalle Street
> Chicago, Illinois."

Attached to the deficiency notice was a statement explaining the deficiencies which had the following caption:

> "Mr. Joseph F. Kisting
> and Mrs. Virginia V. Kisting
> Husband and Wife
> 2537 Windsor Avenue
> Dubuque, Iowa."

A copy of the notice of the deficiency, also dated June 27, 1958, was sent by registered mail to:

> "Mrs. Virginia V. Kisting
> 2537 Windsor Avenue
> Dubuque, Iowa."

Attached was a duplicate copy of the statement explaining the deficiencies.

The contention of the petitioner in regard to the deficiency notice is stated in his brief as follows:

"The sending of a proper notice of deficiency to the taxpayer is a condition precedent to an assessment for income taxes as well as the granting of jurisdiction to the Tax Court of the United States. Section 6212(b) (2) of the Internal Revenue Code of 1954, provides that in a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice or a duplicate original of the joint notice. However, in either case the word joint is a necessary ingredient. Joint means that both names must be on the notice of deficiency—the husband's and the wife's. If this was not done it would be possible for the husband to have his trial in the tax court and the wife to have her's [sic] by paying the tax in the District Court. This could result in untold confusion. Congress wisely saw the chaos which would ensue and insisted that both names be placed on the notice of deficiency so that all issues would be tried in one court by one judge or group of judges so that only one result could be submitted.

"* * * * * *

"In addition, Petitioner's notice was mailed to him care of his attorney at his attorney's office. This too is not in accord with the code since notice must be mailed by registered mail to the last known address of the taxpayer. (D'Andrea v. Commissioner, [105 U.S.App.D.C. 67] 263 F. (2nd) 904). Respondent was aware at all times that Petitioner's address was unchanged. Thus, the Tax Court of the United States is without jurisdiction for a second reason."

In the present case the petitioner petitioned the Tax Court for a redetermination of the deficiencies and penalties under Section 6213, Internal Revenue Code of 1954. However, he then apparently challenged the jurisdiction of that Court to make the redeterminations petitioned for. Although the argument of the petitioner as to this phase of the case is cast in the form of a challenge to the jurisdiction of the Tax Court, it would seem that in reality what the petitioner contends is that the Tax Court should have held that no deficiencies and penalties were ever properly assessed against him because of claimed defects in the deficiency notice. In overruling the contention of the petitioner as to the claimed defects in the deficiency notice, the Tax Court stated:

"It is true that the copy of the notice of deficiency sent to each spouse was addressed to that person individually, but the statement attached to the notice explaining the deficiency made it perfectly clear that it was a joint notice. Furthermore, if that method of addressing the notices was not precisely in accordance with the statutory requirement of a duplicate original of the joint notice, nevertheless that is not 'an error or irregularity of sufficient magnitude to nullify the notice.' Marjorie F. Birnie, 16 T.C. 861, 862.

"The petitioner's further contention that the notice of deficiency was not mailed to his last known address casts upon him the burden of proof, and he has failed to show that it was not mailed to his last known address. The Commissioner sent the notice to the petitioner in care of petitioner's attorney, which would indicate that he had been advised to do that, and at the trial Elden, the attorney, stated that a power of attorney did exist which authorized that all communications be directed to him. In any event the record does not justify a finding that the notice was not directed to the petitioner's last known address by the Commissioner. See

also Clement Brzezinski, 23 T.C. 192.

"We hold that the notice of deficiency was not defective and we think it unnecessary to decide whether by filing the petition the taxpayer waived any defects in the notice of deficiency which would have otherwise denied this Court jurisdiction. Clement Brzezinski, supra; Marjorie F. Birnie, supra; Estate of Henry W. Clark, 10 T.C. 1107 (1948), aff'd on other grounds 173 F.2d 13 (C.A.2, 1949). Cf. Commissioner of Internal Revenue v. Stewart, 186 F.2d 239 [24 A.L.R. 2d 793] (C.A.6, 1951), reversing a Memorandum Opinion of this Court; Williams v. United States, 264 F.2d 227 (C.A.6, 1959); United States v. Prince, 120 F.Supp. 563 (S.D.N.Y., 1954)."

The holding of the Tax Court in regard to the validity of the deficiency notice was correct and it is affirmed.

■■■ The contentions of the petitioner that the Tax Court erred in its findings as to unreported income and penalties will next be considered. It is well settled that it is not the function of a Court of Appeals on petition for review of a decision of the Tax Court to try the case de novo. Paster v. Commissioner (8th Cir. 1957), 245 F.2d 381, 385, cert. denied (1957), 355 U.S. 876, 78 S.Ct. 139, 2 L.Ed.2d 108. The Tax Court is a fact finding tribunal and its findings of fact are presumptively correct and should not be set aside unless clearly erroneous. Schroeder v. Commissioner (8th Cir. 1961), 291 F.2d 649, 652; Commissioner of Internal Revenue v. Newman (8th Cir. 1957), 248 F.2d 473, 475–476; Paster v. Commissioner, supra. Not only the facts but the inferences that may reasonably be drawn therefrom are in the first instance at least for the Tax Court to determine. Paster v. Commissioner, supra. Under Section 7454(a), Internal Revenue Code of 1954, the burden of proving fraud was on the Commissioner.

■ A major item of claimed unreported income is related to transactions involving the White Laboratories. The facts hereafter stated are those found by the Tax Court. During the taxable year of 1951 Harold White operated White Laboratories located in Cedar Rapids, Iowa, as sole proprietor. The petitioner assisted in the organization of that business. The White Laboratories purportedly represented firms doing business with the Dubuque Packing Company. Some of those firms were Oklahoma Rig and Supply Company, Flour City Box Manufacturing Company, Lewis Container Company, and Keebler Engineering Company. The Oklahoma Rig and Supply Company issued checks to the White Laboratories in the amount of $1,300 as commissions on sales made by that company to the Dubuque Packing Company. The Flour City Box Manufacturing Company issued checks at the direction of the petitioner in the aggregate amount of $4,496.46 to the White Laboratories as commissions on sales made by that company to the Dubuque Packing Company. The Lewis Container Company issued checks in the aggregate amount of $1,460.27 to the White Laboratories as commissions on sales to the Dubuque Packing Company. Checks in the amount of $550 were issued to White Laboratories by Keebler Engineering Company for commissions on sales to the Dubuque Packing Company. The White Laboratories did not do business with or render any services for the firms who paid the commissions to it. The commissions were paid to the White Laboratories at the direction of the petitioner and White handled the commissions received as directed by the petitioner. The Tax Court determined that the commissions referred to represented taxable income to the petitioner which he failed to report as taxable income in his federal income tax return for the taxable year of 1951. That Court regarded the White Laboratories as being a mere conduit for the channeling of kickbacks to the petitioner from firms doing business

with the Dubuque Packing Company. The findings of the Tax Court in connection with the commissions referred to have ample support in the record.

■ The next major item of claimed unreported income is related to the Midwest Suppliers. The facts are as found by the Tax Court. In 1951 and 1953 the petitioner's brother, Elmer Kisting of Dubuque, Iowa, conducted a brokerage business at Dubuque, Iowa, under the name of Midwest Suppliers. Elmer Kisting organized the business in 1948 with the assistance of the petitioner. It was originally a partnership between Elmer Kisting and the petitioner. The former drew up a contingent partnership agreement and gave the original to the petitioner. By mutual agreement the petitioner returned the document to Elmer Kisting in 1951. The Lewis Container Company was a firm which sold supplies to the Dubuque Packing Company. Elmer acted as manufacturer's representative for the Lewis Container Company, but the majority of sales made by the Lewis Container Company were made on the order of the petitioner or his secretary. The petitioner suggested to Elmer Kisting that the latter make arrangements with the Lewis Container Company so that it would pay the commissions on its sales to the Dubuque Packing Company through an intermediary. Elmer Kisting made arrangements with Paul G. Weichelt and Associates to act as such intermediary. During 1951 and 1953 the Lewis Container Company issued commission checks in the aggregate of $10,820.58 to Paul G. Weichelt and Associates, who remitted the proceeds of the checks to Midwest Suppliers. The Tax Court found that those commission checks represented taxable income to the petitioner which he failed to report in his federal income tax returns in 1951 and 1953. It was the view of the Tax Court that the petitioner, in this instance, set up a "double screen of deception" to conceal kickbacks being made to him by the Lewis Container Company. The findings of the Tax Court in connection with the commis-

sions referred to have ample support in the record. In connection with this matter there was testimony that Elmer Kisting rarely went to the office of the Dubuque Packing Company and had been directed by the petitioner to stay away from the office of that company. There was testimony that on sales made by the Midwest Suppliers for the Lewis Container Company to firms other than the Dubuque Packing Company the commissions were paid directly to the Midwest Suppliers and were not routed through the intermediary, Paul G. Weichelt and Associates.

■ A number of items of claimed unreported income are related to Alvin Kisting, another brother of the petitioner. The facts as hereafter stated are the facts found by the Tax Court. In 1953 Alvin Kisting operated a brokerage business in Dubuque, Iowa, under the name of Alan Sales Company. He commenced that business in 1952 with the assistance of the petitioner. Flour City Box Manufacturing Company was one of the firms selling supplies to the Dubuque Packing Company. At the direction of the petitioner, the Flour City Box Manufacturing Company made payments of $5,000 and $2,000 to Alan Sales Company as commissions on sales made to the Dubuque Packing Company. Shortly after the payment of the $5,000 check, Alvin Kisting, at the direction and instruction of the petitioner, purchased two bank drafts in the amounts of $3,500 and $1,200 payable to petitioner and Weber Motor Sales, respectively. Alvin Kisting, again at the direction of the petitioner, mailed the $3,500 draft to Joseph Kelly and mailed the $1,200 draft to Modern Auto Sales as payment on the purchase of a new car by the petitioner. Joseph Kelly, to whom the draft of $3,500 was sent, was President of Micro Machine Company, a corporation, in which the petitioner was a shareholder. In addition, the Keebler Engineering Company issued checks to the Alan Sales Company, in the amount of $1,709.15 at the direction of

the petitioner as commissions on sales of packing house equipment and supplies.

Alvin Kisting did not do business with or represent either the Flour City Box Manufacturing Company or Keebler Engineering Company and did not earn the commissions paid by those firms. The Tax Court found that the amounts referred to received from the Flour City Box Manufacturing Company and Keebler Engineering Company represented taxable income to the petitioner which he failed to report in his federal income tax returns. Those findings of the Tax Court have ample support in the record.

█ Another item of claimed unreported income is related to another transaction with Joseph Kelly. In 1951 Joseph Kelly received a commission check for $600 from the Keebler Engineering Company. Neither Joseph Kelly nor Micro Machine Company performed any services for the Keebler Engineering Company nor sold anything to it. After receiving the commission check, Joseph Kelly, at the petitioner's direction, purchased a bank draft in the amount of $600 and turned the draft over to the petitioner. Neither Joseph Kelly nor Micro Machine Company was indebted to the petitioner. The Tax Court found that the $600 bank draft represented taxable income to the petitioner which he failed to report in his 1951 federal income tax return. That finding of the Tax Court has ample support in the record.

█ Another matter to be considered in connection with unreported income also relates to the Keebler Engineering Company. The facts hereafter stated are those found by the Tax Court. Keebler Engineering Company was a firm which sold products to the Dubuque Packing Company. In 1950 that firm employed Elmer Kisting as a manufacturer's representative. After a short time that firm complained to the petitioner that it could not continue to pay commissions to Elmer Kisting doing business as Midwest Suppliers because the products sold by the firm to the Dubuque

Packing Company had a low margin of profit and the commissions were absorbing the remainder of the profit. The petitioner then told that firm that it could discontinue commissions to Midwest Suppliers and thereafter it could drop something in the mail whenever it wanted to send something. During the years of 1951 and 1953 the firm made payments under that arrangement in the aggregate amount of $2,214.94. The Tax Court found that those payments represented taxable income to the petitioner which he did not report in his federal income tax returns. The findings of the Tax Court in connection therewith have ample support in the record.

█ A major item of claimed unreported income is related to White Container, Inc., of Monticello, Iowa. The facts are as found by the Tax Court. In 1952 the petitioner and Harold White organized a corporation known as White Container, Inc., Monticello, Iowa. It engaged in the manufacture of corrugated boxes which it sold to the Dubuque Packing Company. The petitioner and Harold White jointly borrowed the sum of $18,000 from the Monticello State Bank and in April and July, 1952, invested the proceeds of the loan in the business of the corporation. During the taxable year of 1953 payments in the amount of $5,439.45 were made to the Monticello State Bank by the corporation which were applied against the joint indebtedness of the petitioner and Harold White. On January 4th and April 8th, 1953, the corporation issued checks in the amount of $500 and $85 respectively, which, upon instructions from the petitioner, were deposited by Harold White in the petitioner's personal checking account. The Tax Court found that one-half of the amount paid by the corporation to the Monticello State Bank to apply upon the joint indebtedness of the petitioner and Harold White, together with the checks for $500 and $85, represented taxable income to the petitioner which he failed to report in his federal income tax return for 1953. The find-

ings of the Tax Court as to those items have ample support in the record.

■ Another major item of claimed unreported income is related to a loan made to the petitioner by the Flour City Box Manufacturing Company. The facts hereafter stated are those found by the Tax Court. The Flour City Box Manufacturing Company was a partnership of which one Harry Blindman was a partner. That firm sold supplies to the Dubuque Packing Company. In 1951 the Flour City Box Manufacturing Company loaned the petitioner the sum of $10,000 for which he executed his promissory note. Later that firm requested payment of the loan. The petitioner instructed Harry Blindman of that firm to deduct the $10,000 from the White Laboratories' commission account. Payment of the note was effected by the Flour City Box Manufacturing Company crediting its notes receivable account and debiting the White Laboratories commission expense account. The Tax Court found that the $10,000 represented taxable income to the petitioner which he failed to report in his federal income tax return for 1953. Those findings of the Tax Court have ample support in the record.

There were numerous other payments and bank deposits which the Tax Court found represented taxable income to the petitioner which he failed to report in his federal income tax returns for 1951 and 1953. To discuss the record as to each of those items would unduly lengthen this opinion. This Court has considered the record in connection with all of those items. Most of them constitute payments received by the petitioner or made in his behalf and for his benefit and miscellaneous unexplained bank deposits. The petitioner testified in regard to many of them. The findings of the Tax Court as to many of the items

in question not only involved a determination of the weight to be given to documentary evidence and surrounding circumstances, and the inferences to be drawn therefrom, but also a determination of the credibility of the petitioner as a witness. It cannot be said that the findings of the Tax Court as to any of those items were clearly erroneous.

■ We find no merit in the petitioner's contention that it was reversible error for the Tax Court to permit the introduction into evidence of the petitioner's plea of nolo contendere to the charge of knowingly and wilfully evading income taxes for the years 1952 and 1953. There is nothing to show that the question of the admissibility of the plea was raised in the Tax Court by objection or was in any way preserved for review.[1] Moreover, since there was ample evidence, aside from the plea to sustain the decision of the Court in all respects, the admission of the plea, even if incompetent, would not constitute reversible error. See Builders Steel Co. v. Commissioner of Internal Revenue (8th Cir. 1950), 179 F.2d 377, 379.[2]

The Tax Court in its opinion in the present case stated as follows:

"The burden of proof in respect to fraud was upon the respondent and we think that the record shows by clear and convincing evidence that fraud did exist in each of the taxable years."

That holding is amply sustained by competent evidence apart from the plea of nolo contendere.

■ The finding of the Tax Court that the penalties should be imposed for substantial underestimation of petitioner's federal income taxes for 1951 and 1953 is also amply sustained by the record.

The decision of the Tax Court is in all respects affirmed.

1. See Fuller v. Commissioner (10th Cir. 1954), 213 F.2d 102, 104; Friend v. Commissioner (7th Cir. 1939), 102 F.2d 153, 156; and Rule 10(b) of this Court, 28 U.S.C.A.

2. See also, among other cases dealing with the question of the consideration by the

Tax Court of a plea of nolo contendere, Kilpatrick v. Commissioner (5th Cir. 1955), 227 F.2d 240; Masters v. Commissioner (3d Cir. 1957), 243 F.2d 335; and Doggett v. Commissioner (4th Cir. 1960), 275 F.2d 823.