ARTHUR J. and L. JUNE RENO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reno v. Commissioner
Docket No. 3875-79.
United States Tax Court
T.C. Memo 1980-255; 1980 Tax Ct. Memo LEXIS 332; 40 T.C.M. (CCH) 673; T.C.M. (RIA) 80255; July 16, 1980, Filed Dennis C. O'Brien, for the petitioners. Walter F. Williams, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Fred S. Gilbert, Jr., pursuant to section 7456(c) of the Internal Revenue Code, [1] for the purpose of conducting a hearing and ruling on respondent's motion to dismiss for lack of jurisdiction. The Court agrees with and adopts his opinion which is set forth below. [2]
*334 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: On April 4, 1978, respondent mailed, by certified mail, a single joint notice of deficiency addressed to "Arthur J. Reno and L. June Reno, Route 2, Dawsonville, Georgia 30534," setting forth deficiencies in income tax for the years 1974 and 1975 in the respective amounts of $4,421.50 and $3,306.44 and an addition to tax for the year 1975, under section 6653(a), in the amount of $165. A petition for redetermination by this Court of the deficiencies and penalty determined by respondent was filed on March 26, 1979, 356 days after the mailing of the deficiency notice. In the petition, petitioners allege that the notice of deficiency was "improperly mailed." On May 8, 1979, respondent filed a motion to dismiss for lack of jurisdiction on the ground that the petition was not timely filed. Petitioners apparently concede that their petition was not timely, since it was neither received by the Court nor mailed by them within the statutory period of 90 days prescribed by sections 6213(a) and 7502. However, they contend that the single joint notice of deficiency issued by respondent is invalid because a duplicate original *335 of the joint notice as not mailed to each of them separately at their respective addresses, as required by section 6212(b). Since the petition before the Court was not timely filed, we must, in any event, dismiss the case for lack of jurisdiction. If, however, as petitioners contend, the notice of deficiency is invalid due to a failure by respondent to comply with the provisions of section 6212(b), then we will dismiss for lack of jurisdiction on that ground rather than for lack of timely filing of the petition. O'Brien v. Commissioner,62 T.C. 543, 548 (1974). Accordingly, we must determine whether respondent met the requirements of section 6212(b) in issuing a single joint notice of deficiency to the petitioners. [3]
FINDINGS OF FACT Petitioners are husband and wife, but have been separated *336 since January of 1977. [4] Prior to their separation, they both resided at Route 2, Dowsonville, Georgia 30534 (hereinafter referred to as the Dawsonville address). Thereafter, and at the time the petition herein was filed, petitioner Arthur J. Reno (Arthur) resided in Atlanta, Georgia, and petitioner L. June Reno (June) resided at the Dawsonville address. [5]
The Dawsonville address is the only address shown on Federal joint income tax returns filed by the petitioners for the years 1974, 1975, and 1976 with the Internal Revenue Service Center at Chamblee, Georgia. These returns were filed on or about June 12, 1975, March 5, 1976, and April 25, 1977, respectively. The return for 1976 has a typewritten notation on it indicating an "address change." The time at which and the person by whom the notation was made were never established. Respondent commenced an audit of the petitioners' 1974 and 1975 tax returns sometime during late 1976 or early *337 1977. On October 11, 1977, Arthur called the revenue agent conducting the audit and informed him that Arthur's new address was "P.O. Box 45315, Atlanta, Georgia 30320" (hereinafter referred to as Box 45315). [6] In addition, Arthur advised the agent that his residence phone number was 767-0725. All of this information is reflected in a note made by the agent and placed in a file with the tax returns. The note does not explicitly state whether Box 45315 was the new address of Arthur alone or the new address of both Arthur and June. Subsequent to the October 11th phone call, responsibility for the audit of petitioners' tax returns was transferred to tax auditor Terry Bochy. Sometime between October 21, 1977, and February 13, 1978, Bochy received from one Jon P. Herring, apparently an accountant, a power of attorney purporting to appoint Herring as the petitioners' representative before the Internal Revenue Service and directing that copies of all correspondence be sent to him. [7] It was dated October 21, 1977, and was signed by both Arthur and June.The only address shown for *338 them on the power of attorney was the Dawsonville address. On February 13, 1978, Herring met with Bochy and informed her that the petitioners were going through a divorce. He also told her that Arthur had a post office box (number unknown to him) at College Park, Georgia, and that Arthur's phone number was 767-0725. In addition, he advised her that June's address remained the same as that shown on the joint tax returns filed by petitioners. All *339 of this information is reflected in a note made by Bochy and placed in a file with the tax returns. On or about February 24, 1978, Bochy mailed a "Consent Fixing Period of Limitation Upon Assessment of Tax" (Form 872) to the petitioners at the Dawsonville address. Apparently, Bochy filled in the Form 872 prior to mailing it and, for this purpose, used the Dawsonville address as being that of both Arthur and June. Although she was aware of the note in the petitioners' file, dated October 11, 1977, stating that Arthur's new address was Box 45315, [8] Bochy interpreted the power of attorney dated October 21, 1977, to be a direction to send correspondence to the Dawsonville address since that was the address shown thereon for both petitioners. She did not consider the information given to her by Herring at their February 13, 1978, meeting to be sufficient for purposes of sending correspondence to Arthur at an address other than Dawsonville, because at that meeting Herring had not given her a complete address for Arthur. *340 Arthur and June both signed the Form 872, without questioning the address shown thereon, because the address was the same as that used by them on the tax return for the year to which the Form 872 pertained. The Form 872 was returned to respondent on March 10, 1978. [9]
On March 14, 1978, Bochy attempted to call Arthur at the telephone number (i.e., 767-0725) provided by Arthur on October 11, 1977, and by Herring on February 13, 1978, but was advised that the number had been disconnected. On April 4, 1978, a single joint notice of deficiency for the years 1974 nd 1975 was mailed to petitioners at the Dawsonville address. [10] The notice was prepared and mailed under the direction of Cindy Weeks, "lead clerk over the typing unit which issues the statutory notices of deficiency." She was aware of the note in the petitioners' file dated October 11, 1977, stating that Arthur's new address was Box *341 45315 and the note made by Bochy on February 13, 1978, indicating that the petitioners were getting a divorce and had separate addresses. However, she stated that, since the note dated February 13, 1978, did not give a complete address for Arthur, her office mailed a single joint notice of deficiency to the Dawsonville address. Her office did not mail a separate notice to Arthur at Box 45315, the address shown on the note dated October 11, 1977, because (1) the power of attorney dated October 21, 1977 showed only the Dawsonville address for both petitioners, and (2) the Form 872, which was the most recent piece of correspondence in the file, showed only the Dawsonville address. June does not recall whether she ever received the notice of deficiency for 1974 and 1975 at the Dawsonville address. Arthur's recollection is that it was forwarded to him (apparently by June) at Box 45315. The precise date on which he received the notice is unclear. OPINION Section 6212 [11] in essence provides that, if the respondent determines that there *342 is a deficiency in a taxpayer's Federal income tax, he is authorized to send a notice of such deficiency by certified or registered mail. In general, the notice will be sufficient if mailed to the taxpayer's "last known address." Sec. 6212(b)(1). With respect to joint income tax returns filed by husband and wife, section 6212(b)(2) permits the respondent to send a single joint notice of deficiency, except where he has been notified by either spouse that separate residences have been established. [12] In that event, "in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address." Sec. 6212(b)(2). *343 For purposes of section 6212, a taxpayer's "last known address" is that address to which, in light of all the facts and circumstances, the respondent reasonably believed the taxpayer wished the notice of deficiency to be sent. Delman v. Commissioner,384 F.2d 929 (3d Cir. 1967); Looper v. Commissioner,73 T.C. 690 (1980). Typically, the "last known address" will be the address shown on the tax return filed by a taxpayer; however, the respondent is not entitled to rely on that address if he learns [13] or is notified by the taxpayer of a change in address. Keeton v. Commissioner, 74 T.C.     (May 21, 1980); O'Brien v. Commissioner,62 T.C. 543 (1974). Once he becomes aware of a change in address, the respondent must exercise reasonable care and diligence in ascertaining and mailing the notice of deficiency to the correct address. Johnson v. Commissioner,611 F.2d 1015 (5th Cir. 1980), revg. a Memorandum Opinion of this Court; Keeton v. Commissioner,supra.
*344 Petitioners contend that, prior to the issuance of the single joint notice of deficiency on April 4, 1978, they had properly notified respondent that they were maintaining separate residences and that, therefore, respondent was required to send a duplicate original of the joint notice to each of them at their respective last known addresses, under section 6212(b)(2). They further contend that, given respondent's failure to send duplicate originals in accordance with the statute, the notice of deficiency that was issued to them should be held to be invalid. Initially, we consider petitioners' contention that they gave respondent proper notice of separate residences. Relying in part on Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367 (1974), respondent argues that petitioners failed to give sufficient notice that they had established separate residences, by asserting that they did not clearly and definitely notify him of any change of address. He contends, therefore, that the Dawsonville address shown on the petitioners' joint income tax returns was their "last known address" for purposes of mailing a notice of deficiency. The basis for his position is that, *345 although Arthur had notified the agent conducting the audit that his new address was Box 45315, subsequently, the agent to whom the audit was transferred had been advised by petitioners' accountant (Herring) that Arthur had a post office box (number unknown) in College Park, Georgia (not Atlanta, as stated by Arthur). Respondent asserts that "[there] thus was no way for the agent to know whether the two Post Offices (sic) boxes were the same or that Mr. Reno no longer resided at the Dawsonville address reflected on the returns." He further asserts that the confusion as to the petitioners' addresses was compounded by the fact that (1) the power of attorney dated October 21, 1977, showed only one address for both Arthur and June, and (2) the petitioners took no steps to correct the address shown on the Form 872, which was the last document filed by them prior to the issuance of the notice of deficiency. In our view, respondent has improperly confused the problem of determining the respective last known addresses of Arthur and June with the question of whether they had given him proper notice, under section 6212(b)(2) and section 301.6212-1(b)(2), Proced. & Admin. Regs., that they *346 had established separate residences. The two questions are not unrelated, but as this Court has previously pointed out, the requirements of the statute and regulatons with respect to notice of separate residences may be met even though the separate address of one spouse is unknown. * * * [there] is nothing in the statute or regulations to require the spouse giving notice of separate residences * * * to furnish the residence of the other spouse. The spouse giving the notice might be totally unable to furnish information as to the present residence of the other spouse.The statute and regulations only require that the Secretary or District Director for the district in which the return was filed be notified "by either spouse" that separate residences have been established. [Camous v. Commissioner,67 T.C. 721, 729 (1977).] Accordingly, before we consider respondent's assertion that Dawsonville was the last known address of petitioners for purposes of section 6212, we shall determine whether either of them had given him proper notice of separate residences. On the basis of the facts before us, we conclude that respondent was properly notified prior to the issuance *347 of the notice of deficiency that petitioners had established separate residences. [14] Regardless of what respondent had been told prior to February 13, 1978, on that date, he was informed by the authorized representative of both petitioners that (1) petitioners were in the process of getting a divorce, (2) Arthur had a post office box in College Park, and (3) June's address continued to be Dawsonville, as shown on the joint tax returns. Having this information, it must have been apparent to respondent that petitioners had established separate residences. Obviously, Arthur was not residing in his post office box. However, since respondent was informed that petitioners were getting a divorce and was given one address for June and a separate (albeit incomplete) address for Arthur, we think that it is at least somewhat disingenuous of him to argue that he had no way of knowing whether or not Arthur still resided at the Dawsonville address. Even assuming that Dawsonville was the last complete address that respondent had in his file for Arthur, it is clear that he had nevertheless been notified that Arthur no longer lived there. *348 Our conclusion with respect to the sufficiency of the notice of separate residences is not altered by the fact that, subsequent to February 13, 1978, petitioners returned to respondent an executed Form 872 without objecting to or correcting the address shown thereon. We do not agree with respondent that, by merely signing and returning this single form, the petitioners contributed to a "course of conduct" from which he could reasonably infer that they were both residing at the Dawsonville address. [15]Alta Sierra Vista,Inc. v. Commissioner,62 T.C. 367 (1974), relied on by respondent in this connection, is clearly distinguishable. *349 In that case, the only issue was whether notices of deficiency had been sent to the taxpayer's "last known address," under section 6212(b)(1). The taxpayer there argued that its course of conduct in communicating with respondent during an audit of its tax regurns was tantamount to notification that it had abandoned the address shown on the returns in favor of either of two alternative addresses. The Court held that, to the contrary, the taxpayer's course of conduct had served to obscure its correct address. This holding was based only in part on the fact that, on at least three separate occasions over an extended period of time, consent forms (i.e., Form 872's) had been mailed to the taxpayer's president showing as the taxpayer's address the one given on its returns, and no objection to the use of that address had ever been made. Importantly, at no time prior to the mailing of the consent forms had the taxpayer given express notice of any change whatever in its address. Here, respondent was expressly notified that petitioners were getting a divorce and had separate addresses, and we do not think that he was entitled to conclude otherwise without some affirmative indication *350 by them.See Looper v. Commissioner,supra. Petitioners simply signed the Form 872 in response to a request to extend the statute of limitations on assessment of tax for one of the years under audit, not as an affirmative representation that they had re-established a joint residence. [16] Accordingly, we hold that petitioners did give respondent sufficient notice, under section 6212(b)(2), that they had established separate residences. Having made this determination, we turn to a consideration of respondent's contention that the Dawsonville address was the "last known address" of both Arthur and June for purposes of section 6212. Considering all the facts and circumstances before us, we think that it is clear that Dawsonville was not Arthur's "last known address" for purposes of section 6212. [17] Respondent *351 correctly points out that, due to the potential administrative burden on him, he is not required to make an independent investigation prior to mailing a notice of deficiency to determine whether a taxpayer has changed his address from the one last known to respondent. See McCormick v. Commissioner,55 T.C. 138 (1970). However, he is required to use reasonable care and diligence in ascertaining a taxpayer's correct address for purposes of mailing the notice of deficiency. Johnson v. Commissioner,611 F.2d 1015 (5th Cir. 1980); Arlington Corp. v. Commissioner,183 F.2d 448 (5th Cir. 1950) (both reversing Memorandum Opinions of this Court); Keeton v. Commissioner, 74 T.C.     (May 21, 1980). Here, where respondent was clearly notified that Arthur was getting a divorce and had changed his address, and had earlier been given a complete separate address for Arthur, we think that reasonable care and dilgence required respondent to make at least a cursory inquiry to determine his correct address, if there was any confusion with respect thereto. Compare Keeton v. Commissioner,supra.
*352 The note from respondent's file on petitioners, made by the revenue who was initially assigned to the audit of their returns, indicates that on October 11, 1977, Arthur called the agent and told him that Box 45315 in Atlanta was Arthur's new address. Although the note could have been interpreted to mean that Box 45315 was the new address of Arthur alone or the new address of both Arthur and June, in either case, it is clear that as of October 11, 1977, Box 45315 became Arthur's "last known address." Both the agent to whom the audit was later transferred and the agent who had ultimate responsibility for the preparation of the notice of deficiency were aware of the note, but neither of them made any effort to contact the agent who made it to determine the significance of the new address. Surely, if this had been done, it could not have resulted in any appreciable burden on respondent's agents. Having been expressly informed that Box 45315 was Arthur's new address, respondent was not entitled to use another address without a clear expression of intent that he should do so by or on behalf of Arthur. See Looper v. Commissioner,73 T.C. 690 (1980). We are of the *353 opinion that respondent received no clear and specific notification to change Arthur's address from Box 45315. If, as respondent contends, the power of attorney dated October 21, 1977, or the subsequent notice given by petitioners' representative that Arthur had a post office box (number unknown) in College Park created an ambiguity as to Arthur's correct address, then a simple telephone call or note to June at Dawsonville or to the post office in Atlanta would surely have cleared things up. [18] We fail to see how such action would have been a burden on respondent. Furthermore, for the reasons previously stated in our discussion of the adequacy of the notice of separate residences, we do not think that respondent was entitled to rely on the Form 872 for the address of both Arthur and June.[19] There have been cases and undoubtedly will be others where respondent may reasonably rely on such a document for the address of a taxpayer, but, given the facts and circumstances of this case, it was not reasonable for him to do so here. [20]
*354 Since we have held that petitioners did give respondent sufficient notice of separate residences, it follows that he should have sent a duplicate original of the joint notice (or a "separate" notice) [21] of deficiency to each of the petitioners in order to properly notify both of them, under section 6212(b)(2), that a deficiency was being asserted. No notice of deficiency was mailed to Arthur at his last known address of Box 45315, and we think it clear that the joint notice that was sent to the Dawsonville address may not be given any effect as to him. [20] However, it does not necessarily follow, as petitioners contend, that the joint notice is invalid as to June. *355 Petitioners filed joint income tax returns for both 1974 and 1975. Section 6013(d)(3) provides that "if a joint return is made * * * the liability with respect to the tax shall be joint and several." Accordingly, respondent had the option of proceeding against Arthur and June jointly or of proceeding against one or both of them separately. Garfinkel v. Commissioner,67 T.C. 1028 (1977); Dolan v. Commissioner,44 T.C. 420 (1965). The provisions of section 6212(b)(2) do not alter the nature of the liability that arises from the filing of a joint return, but merely prescribe the manner in which respondent may notify the spouses who filed the return that a deficiency is being asserted against them.This section generally permits, but does not require, the respondent to send a single joint notice of deficiency to the spouses in order to establish joint liability. Alternatively, respondent may proceed against both spouses or either of them by sending "separate" (i.e., addressed to each individually) notices of deficiency. Even if notified (as he was here) that the spouses have established separate residences, respondent may still elect to send either *356 a separate or joint notice of deficiency; but if he chooses to proceed against both spouses by sending a joint notice, then section 6212(b)(2) requires him to send duplicate originals of the joint notice to each of the spouses. The obvious purpose of this requirement is to assure that each spouse will receive notice of the deficiency being asserted against him or her. Garfinkel v. Commissioner,supra;Dolan v. Commissioner,supra.See H. Rept. No. 1860, 75th Cong., 3d Sess. (1938), 1939-1 (Part 2) C.B. 763. We have no doubt that respondent could properly have sent a separate notice of deficiency with respect to the years 1974 and 1975 to either June alone or Arthur alone, so long as the notice made it sufficiently clear that the liability asserted arose out of the joint returns filed by them. Garfinkel v. Commissioner,supra;Dolan v. Commissioner,supra. See Kisting v. Commissioner,298 F.2d 264 (8th Cir. 1962).This being so, we can see no reason why the joint notice of deficiency that was sent to the Dawsonville address should be held to be of no effect whatever simply because *357 respondent did inadvertently what he could have done intentionally. The joint notice of deficiency was sent to June's last known address and, in our view, was clearly sufficient as a separate notice to her that a deficiency was being asserted with respect to her joint and several liability for taxes due in connection with the 1974 and 1975 returns. [23]
The fact that the notice that was sent to the Dawsonville address was technically not in the form of a separate notice to June does not alter our conclusion. See Kisting v. Commissioner,supra at 268; Dolan v. Commissioner,supra at 434, 435. *358 If anything, the inclusion of Arthur's name on the notice could only have helped to apprise June that the liability asserted arose from the joint returns filed by them. Moreover, regardless of whether the notice was technically a joint or separate notice, we think it is clear that June received all that she was entitled to under section 6212(b)(2), i.e., a notice of deficiency sent by certified mail to her last known address, even though Arthur did not. Since the obvious purpose of section 6212(b)(2) was fulfilled with respect to June, we hold that the single joint notice of deficiency mailed by respondent to the Dawsonville address was effective as a separate notice to June. In accordance with the foregoing, respondent's motion to dismiss for lack of jurisdiction for failure to file a timely petition will be denied with respect to Arthur, but the case will be dismissed for lack of jurisdiction as to him on the ground that respondent failed to issue a proper notice of deficiency to him. With respect to June, respondent's motion to dismiss for lack of jurisdiction will be granted. An appropriate order will be entered.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Since this is a pre-trial motion directed to the Court's jurisdiction, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in this particular circumstance, under the authority of the "otherwise provided" language of that rule.
3. Of course, if the case is dismissed on the ground that respondent failed to issue a proper notice of deficiency, the effect would be to vitiate any assessment of tax related to that notice. On the other hand, dismissal on the ground that the petition was not timely would have no effect on the assessment of tax. See O'Brien v. Commissioner,supra.↩
4. They are currently involved in divorce proceedings. ↩
5. Apparently, June also lived in Atlanta for a short period of time, but it is unclear whether she was living there at the time of the issuance of the notice of deficiency.↩
6. Arthur began renting Box 45315 on April 1, 1977, and was still renting it at the time of trial.↩
7. Bochy did not consider the power of attorney to be a valid one, since herring was not properly enrolled as an agent authorized to practice before the Internal Revenue Service. However, she accepted information from him, although she felt that she could not release any information to him with respect to the audit of petitioners' returns. We note that testimony given by Mary Ritchie, group manager over the tax auditor group of which Bochy was a member, indicates that the Service could accept information from and send copies of correspondence to Herring pursuant to the power of attorney, but that it considered the power to be ineffective to the extent that it purported to authorize him to act as an advocate for the petitioners.↩
8. Bochy testified that she had no reason to contact the agent who made the note and inquire as to the significance of the new address shown for Arthur.↩
9. Several days later, a corrected Form 872 was sent to the petitioners at the Dawsonville address because a mistake had been made in filling out the first one. This second Form 872 was returned to respondent on April 10, 1978, subsequent to the issuance of the notice of deficiency.↩
10. A copy of the statutory notice was mailed to Herring, as directed by the petitioners in the power of attorney dated October 21, 1977.↩
11. Section 6212 provides in pertinent part as follows: (a) In General.--If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. (b) Address for Notice of Deficiency.-- (1) Income and gift taxes and taxes imposed by chapter 42.--In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence. (2) Joint income tax return.--In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address. ↩
12. Section 301.6212-1(b)(2), Proced. & Admin. Regs., provides that "the notice of separate residences should be addressed to the district director for the district in which the joint return was filed."↩
13. Of course, respondent has no duty to undertake an investigation to determine whether there has been a change in the address last known to him. See McCormick v. Commissioner,55 T.C. 138, 141-142↩ (1970).
14. Respondent has made no argument that notice orally given to the agent conducting the audit of a taxpayer's return is insufficient under section 6212(b)(2), nor do we think that he could so argue. See DeWelles v. United States,378 F.2d 37 (9th Cir. 1967); Weinroth v. Commissioner,↩ 74 T.C.     (May 27, 1980).
15. Respondent was fully aware that June continued to reside at the Dawsonville address and that both petitioners had appointed the same person to represent them during the audit. Accordingly, it should have been no surprise that he successfully contacted both Arthur and June, who would be jointly liable for any deficiency, even though a separate Form 872 was not mailed to Arthur at some address other than Dawsonville.Of course, there is no requirement that respondent send duplicate originals of a Form 872 to taxpayers who file a joint return and later give notice of separate residences.↩
16. We note that it was respondent's agent who filled out the form using only the Dawsonville address, and that the address corresponded to the one shown on the joint tax return with respect to which an extension of the limitations period was being requested. Thus, petitioners had little reason to question respondent's use of that address on the Form 872.↩
17. It is undisputed that Dawsonville was June's "last known address."↩
18. The agent conducting the audit did attempt to call Arthur at the phone number given to her by petitioners' representative, but was unsuccessful in contacting him and, apparently, made no other effort to ascertain his correct address. ↩
19. See notes 16 and 17, supra,↩ and the accompanying text. 20. It must be emphasized that respondent was expressly notified that Arthur had a new address and that petitioners were getting a divorce. In light of this and the express requirement of section 6212(b)(2) that spouses who have established separate residences each receive a notice of deficiency with respect to a joint return, it was clearly unreasonable of respondent to send a joint notice of deficiency to the single address shown on the Form 872 without making some sort of inquiry. In this connection, see Johnson v. Commissioner,611 F.2d 1015, 1020↩ (5th Cir. 1980), where it is noted that respondent's own field manual "contemplates at the very least that the Commissioner's agents will exercise reasonable care and make an extra effort to ascertain a taxpayer's correct last known address," if there is any doubt regarding that address.
21. As discussed infra↩, in spite of the fact that spouses have given notice of separate residences, respondent may elect to send a "separate" notice of deficiency to each spouse rather than sending duplicate originals of a joint notice. 20. Arthur testified that the joint notice originally sent to Dawsonville was eventually forwarded to him, apparently by June. It is unclear precisely when he received it. Respondent has made no argument that Arthur received the notice, or otherwise received actual notice of the asserted deficiency, with sufficient time to file a timely petition.↩
23. June does not recall whether she received the notice of deficiency for 1974 and 1975. Considering the entire record, we have little doubt that she did receive it, although she may not have read it. In any event, the fact that she may not have actually received the notice is irrelevant, since it was mailed to her last known address. See, e.g., Delman v. Commissioner,384 F.2d 929 (3d Cir. 1967); DeWelles v. United States,378 F.2d 37 (9th Cir. 1967); Lifter v. Commissioner,59 T.C. 818↩ (1973).